And I will now hear Rodriguez v. Brown, case number 21-1124. Mr. Krohn, you may proceed. Good morning, your honors, and may it please this court. My name is John Krohn and I represent the appellate Jeanette Rodriguez in this matter. In a case of discrimination, retaliation, and harassment under Title VII Orcata, an employee need not prove discriminatory intent or motive on the part of the employer. It's irrelevant. Rather, an employee need only show that a protected basis was the but-for cause for the adverse action. The but-for cause can be one of many causes and need not be the primary or dominant cause. Here, Ms. Rodriguez has served the people of Arapahoe County for well over a decade. She has served the people of Arapahoe County admirably and still does to this day. Ms. Rodriguez is Hispanic, female, Venezuelan, and speaks with an accent. That makes her a bit of an oddity in the Arapahoe County Sheriff's Department, and a few years back it made her a target of certain of her colleagues and supervisors. During a training exercise, Ms. Rodriguez made a mistake, where mistakes ought to be made during training. She holstered while laying down. So she's lying down on the ground and she holstered her weapon. This was a mistake and this is not disputed. What came next was a campaign of relentless harassment, requirements for remedial trainings, threats of termination, and everything else described in the briefs by both sides. Well, Mr. Crone, you mentioned a pattern, the word pattern in your brief, but wasn't there a pattern here that your client needed to repeat remedial training because she continued to fall short on safety and decision-making? Well, that, Your Honor, is of course disputed. So what Ms. Rodriguez characterizes as a pattern of harassment and this requirement to repeat remedial trainings are adverse employment actions in her mind. So they're the result of harassment, unlawful harassment, discrimination. Well, are you disputing the fact that she still fell short on safety and decision-making in these subsequent remedial trainings? Absolutely, Your Honor. So Muthalar... Because the record is replete with reports of those trainings and with specifics showing where she was not compliant with safety and decision-making requirements. So are you saying that those reports are all wrong? I'm saying that they're disputed, that they're material facts and they're Where did you say that? Where did you dispute that? I kind of missed it, like Judge Matheson, maybe. So in the appellant's brief at page 10, Ms. Rodriguez disputes the fact that she hadn't passed these remedial trainings, that in fact she hadn't successfully completed them. Where did you dispute it below? Where did you dispute that below? Oh, in the summary judgment briefing, Your Honor. Did you say in the summary judgment something that she did pass them, she did meet the criteria, and it was wrong to say she didn't? Oh, absolutely. And in fact, Ms. Rodriguez went beyond that. She cited the testimony of Muthalar Dixon, one of the sheriff's firearms instructors that actually gave instruction, remedial instruction to Ms. Rodriguez. He testified, Mr. Dixon testified, that Ms. Rodriguez was required to undergo repeated remedial firearms training at least three times, in his knowledge, and that she passed all three. That's his testimony. Let me ask you to try to get to the center of this one example, which is a number of trainers, and we have a whole roster of people. It's not just one person who claims that she failed or that she was deficient, but instead we have a number of trainings, a number of chances. But one fact in particular, she keeps her finger on the trigger, which that's a problem. And that is mentioned more than one training. Are you saying now that she didn't keep her finger on the trigger? No. What I'm saying now is that Ms. Rodriguez conceived she made a mistake in the initial training that gave rise to all of these events, which is that she holstered while laying prone. And then subsequently to that, she was required to undergo repeated remedial trainings, which she passed, which she absolutely passed. Now, if there's a specific allegation of fact by the sheriff that on training number two, for example, and I'm not sure where we're that she kept her finger on the trigger, then yes, that's disputed. Because there's testimony in the record that she, in fact, successfully completed these remedial trainings. And clearly that's a material fact and it's disputed. And in fact, I think it's put in even greater relief when the comparators are examined in this case. And so Ms. Rodriguez identified five comparators that committed similar or less serious or excuse me, more serious offenses and were treated disparately. So, for example, Deputy Briskey shot his firearm while holstering and shot himself and suffered injuries that were minor, but shot himself and nothing more. He didn't even have to go as far as the record shows to remedial training. Deputy Carter stored his weapon in the jail in an unsecured area where inmates could access the weapon, the firearm. He received a letter of reprimand and a track star entry, which is like an electronic employment record describing the incident. Deputy Carter went on to then leave his general access keys in the jail in an area accessible to inmates and again, received a letter of reprimand and another track star entry. Deputy Hansen didn't sufficiently pat down an inmate coming into the jail and allowed a knife, a weapon to be smuggled in. For that, Deputy Hansen received one day of leave without pay, a letter of reprimand and a track star entry. Deputy Hunt suffered an accidental discharge, again, a discharge of a weapon during a drill where she was clearing a malfunction from her weapon and was only subject to on-the-spot remediation. So, the record shows that when trainers are training deputies on the use of their firearm, there's a range of possible action that can be taken. I get a clarification on your comparators. You've asserted three protected characteristics here, her national origin, her ethnicity, and forgotten what the third one was, but do they all, do you think a comparator, a comparator typically is somebody that is treated more favorably and does not have the alleged factors that are being discriminated against. So, do you think the comparator has to have none of the three characteristics that she asserts, or is she asserting them in combination so that a proper comparator would be somebody who just doesn't have all three of those characteristics? Yes. So, she's asserting them in combination. She's asserting national origin, race, and gender. But in any event, these comparators would work because for example. I need to have you answer the question. Does the comparator, do you think a valid comparator would be somebody who has one or two of those characteristics, but not all three? Or do you think a valid comparator has to have none of the characteristics that she's asserting? Got it, your honor. So, I think that it's fine in this instance for a valid comparator to share a characteristic, or perhaps even two, because she's asserting an intersectional theory of discrimination. In other words, she's discriminated against based on a combination of characteristics. Well, that gives you a whole lot of, I mean, so you think that she is discriminated against only because she had all three characteristics and that had she had only two of those, the company would not have discriminated, the sheriff's office would not have discriminated against her. Well, I do think that that's permissible, but fortunately in this case. No, I want to know what you asserted here. I mean, because you are trying to rely on some comparators that share at least one of her characteristics and sometimes two of them. And yet, that's not the way comparators work. Comparators have to be people who do not share your characteristics. So, I am very confused. Do you want us to treat this as a case only alleging all three or none? Or are you simply trying to say, man, I'm trying to get the biggest bag I can and I'm going to sort a whole bunch of them, each of which is single? No. So, I think it's proper for the court to consider all of her protected characteristics. Do they all have to be present before you think? Is she saying that if I had just not had one of those characteristics, I don't think I would have been discriminated against? I think it was the combination that tipped off the sheriff's office to dislike me. That's correct, Your Honor. I think here, Ms. Rodriguez is asserting that it's the combination of the characteristics that caused such an extreme reaction to a minor training incident. So, that anybody who doesn't have that combination is a valid comparator. That's why I've given these names to the court, you say. And you say that I have to show a bias and a prejudice, not a bias against women, not a bias against Spanish-speaking, not a bias against somebody with a foreign background, but only I have to prove a bias only against people that have all three. That is what Ms. Rodriguez is alleging here. But fortunately, even if the court said, we don't buy that. We don't buy that. You've got to go one by one and you've got to show national origin discrimination. Let's look at a comparator. Now, let's look at Ms. Rodriguez. What's your best authority to support that position? The authority to support that position is really in the statute itself. So, the statute protects. Do you have a case, though, where a court has said what you just said? I don't have a case off the top of my head. I can certainly provide you with a site. I'm planning to hopefully reserve the last couple of minutes for rebuttal. I could go the briefing and provide you a site I don't off of the top of my head. And so, here, I think that to sort of complete the loop on the comparator issue, even if the court said, no, we don't buy the theory of intersectional discrimination. We don't think Title VII protects against multiple bases. It protects against discrimination on single bases, one at a time. Here, the comparators meet that standard anyhow. Deputy Briskey, for example, is a white male, and Ms. Rodriguez is a Hispanic female. And so, Deputy DeHill is also Hispanic. So, on that comparator, there's overlap. So, if the court didn't buy that, I think that there would be concern with perhaps one of the comparators. If I may, I've got roughly two minutes left. I'd like to reserve that remainder for rebuttal. Thank you, Counsel. Mr. Perkins? Thank you, Your Honor. Dan Perkins on behalf of Sheriff Brown in the Sheriff's Office. I want to start, first of all, by pointing out the appellant has made a very big show of trying to characterize the nature of this appeal as one in which the district court failed to apply the appropriate summary judgment standard. When, in fact, this is really nothing more than a very common situation in summary judgment cases, and that is the situation in which the appellant has failed to present sufficient evidence to defeat a summary judgment that was raised under a very clear, very well-established, and very well-applied standard set forth by the district court in the summary judgment order. Quite frankly, I would hope I don't have to explain to this court what the summary judgment standard is in a Title VII disparate treatment case. It's been the case for 45 or more years that there's a burden-shifting analysis that courts undertake in which the plaintiff is first required to present a prima facie case once there's a legitimate non-discriminatory reason that's been articulated by the defendant. The plaintiff then has to come forward with some it's more likely or possibly likely that discrimination was the real motive, or they have to, even if they concede that there is a legitimate reason, they have to come forward and say, but there's circumstances that exist which give rise to the inference of discrimination. That's the standard that the judge below set forth in the summary judgment order, and that's the standard she applied. Quite frankly, Your Honors, the evidence that was by the plaintiff simply didn't become sufficient to show that there were any circumstances under which discriminatory animus can be attributed or a discriminatory reason can be the but-for causation for Ms. Rodriguez, the reason or the things that happened to Ms. Rodriguez. There's just not enough evidence in the record, and admittedly, and the court went through this very, very exhaustively. Well, counsel, what is your response to Mr. Crone's argument that his client, they kept sending her to these remedial trainings and she kept passing them, that she passes each one? Well, I would submit, Your Honor, there's no evidence in the record to support that. The only evidence that she points to is her own statement that she felt like she passed, that she didn't do things that she was accused of doing in those particular trainings, and that's just not enough. I mean, the rule here or the job here of the trainers is to evaluate her performance. Her job as the trainee is not to evaluate her performance. It's to do what she's asked to do. Well, wait a minute. There is a track star entry that says, and referring to her February 13, 2015, remedial training and designates which she successfully completed. Now, what I thought you were going to answer is that that was simply talking about her marksmanship and not the rest of her efficiencies. That's correct, Your Honor. I was working my way towards that. I wanted to point out that really, with respect to the subsequent trainings, she keeps saying that, but I passed these, I did well, and there's just no evidence to support that. But you said there's nothing. You said there's nothing that supports it except her word, but there is that track star entry. Yes, Your Honor. I'm trying to clarify that I was referring to the subsequent trainings. The initial training, you're correct, there is a track star entry, and that is addressed ad nauseum by the court in the summary judgment order. That evidence or that entry was entered by a person who had no business entering that entry in the first place. It was entered by her supervising lieutenant, Lieutenant Wickstrom, who no longer works for the sheriff's office. Lieutenant Wickstrom testified that she's not a firearms expert, so she has no expertise in determining whether someone has met the proper burdens or performed adequately in the remedial training. She also testified she was not present at Ms. Rodriguez's training, and that the only reason she put that entry in there was she assumed that Ms. Rodriguez had passed because she qualified with her weapon. And as Your Honor, Judge Phillips pointed out, that's a test of marksmanship. That's not a test of using the weapon safely and appropriately at all times. It's simply measured by whether or not the person who's performing the test is able to hit the requisite number of targets within the requisite time period, and that's it. And Ms. Rodriguez has absolutely no evidence to contradict what Lieutenant Wickstrom testified to. I do want to address that Mr. Crone brought up in his response that he had testimony from Mr. Dixon who testified that Ms. Rodriguez took these three remedial courses and passed them all. The problem with that is Mr. Dixon admitted in his deposition, and this is in the record in his deposition testimony, he admitted he wasn't present for any of those trainings. He was not one of the instructors who was present who witnessed any of Ms. Rodriguez's performance. He didn't write up any statements in terms of what he witnessed. He didn't write up any kind of reports over about what happened in that training. He wasn't present, and he admitted that. So any statement by Mr. Dixon that Ms. Rodriguez passed those remedial trainings is purely conjecture and hearsay on his part and would properly have been discounted or not considered by the court below. So I would say, you know, the evidence, while there is some minimal evidence of... I'm finding that your sound is cutting off. Is it just my computer or are the other two judges able to hear fully or not? I can hear. I can hear as well. Okay. For some reason, mine, you're coming in and out. It's only been in the last minute, so I've just quickly notified you. I don't know if... Let's see if it continues. I may have to get off, but I guess we're... I mean, I've heard all... I've heard it all. It's just been a little bit of an intermittence, and I can, of course, read the transcript too, but proceed then. Okay. Thank you, Your Honor. As I was saying, I think there's... While there may have been some minimal amount of evidence to suggest Ms. Rodriguez's claim, you know, to at least support her minimal argument that she passed, that evidence has been thoroughly debunked by the totality of the record, and that's what the court is responsible for reviewing, is looking at the totality of the evidence presented, not just taking Ms. Rodriguez's own evidence and saying, this is enough to support or to defeat a summary judgment. Let's go to trial. It's looking at... But summary judgment, the district court isn't empowered to make credibility decisions, right? The court is not empowered to make credibility determinations, and I don't think the record below shows that our district judge did that. I think what it shows is in looking at all of the evidence and weighing it, not weighing it, but giving it the total consideration and looking at the light most favorable to the plaintiff, there just wasn't enough to suggest that there were circumstances giving rise to discriminatory intent. Well, you have two pieces of evidence that she passed substantively, everything that was required. You have her own testimony and you have Wickerstrom. So, I mean, how could the court have said there's no genuine dispute of fact unless the court says, I don't believe those two people because I don't think they're credible. Well, I think, first of all, the testimony from Lieutenant Wickstrom was defendant's testimony. It was not testimony in support of Ms. Rodriguez's position. I think Your Honor is referring to the testimony of Deputy Dixon. I am, yeah. Well, as I said, I think the court is allowed to look at Deputy Dixon's testimony and say, okay, what does Deputy Dixon really know here? Just because he says Ms. Rodriguez took these three remedial trainings and passed them all doesn't necessarily make it true or even inferentially true, especially when Deputy Dixon's deposition testimony completely contradicts his knowledge of what actually happened in those trainings. He can testify all he wants to that Ms. Rodriguez passed, but if he wasn't present, if he didn't, if he wasn't part of the crew that was evaluating her performance, he really has no idea whether she passed or not unless somebody told him. And he doesn't argue that someone told him she passed. He doesn't aver that he read some document that said she passed. What he says is, hey, she passed, but he would have no idea. So I think the court is perfectly within its rights to look at that and say, well, just because he said that she passed, that's not evidence that she passed, particularly in light of the totality of the evidence there, which says he wasn't even present when those trainings were done. I think the court is entitled to look at that and decide. No reasonable jury could look at his testimony and say that he could credibly, I don't even think the court would say credibly, I don't think the court would say he cannot testify that he was there and that she had passed. I think it's important to note that the whole issue of whether or not these individuals were similarly situated to Ms. Rodriguez is entirely dependent on an incorrect reading and her framing of the issue as she only committed one infraction that got her into training. She keeps harping on this and has done this from the beginning of this lawsuit, that the only reason she was referred to remedial training in the first place was because she holstered while prone. Objectively, in the record, that's simply not supported. The evidence in the she had also previously in that day had articulated some very poor decision making. When she was questioned by Deputy Cunningham in the shoot house earlier that same day about why she chose to shoot a particular way, she proceeded to explain to Deputy Cunningham that she shot an individual in the arm to try and shoot the gun out of his hand because that's the way she was trained. Well, everybody in the sheriff's office and everybody who testified in this case has testified that's not what we teach. We don't teach... Counsel, what I'm having trouble with is not why she didn't pass the first time, but will the record show the precise reasons that she didn't pass the continued training sessions? I mean, I know she didn't and I know various instructors were involved, but what I don't know is if we're going to see a report, a summary on each of those sessions saying she didn't pass because she kept her finger on the trigger or she shot not to kill. Are there any other documented faults that she had that got her flunking these other tests and are they all on the record? Yes, Your Honor, they're all in the record. They're in the reports that were issued by the reviewing deputies who conducted the trainings. The first two trainings were done by deputies True and... What other violations? I mean, it's hard for me to believe that she, having known that you can't keep your finger on the trigger, that she continued that fault throughout. It's also hard for me to believe throughout that she continued to shoot for the arm rather than the torso. So I'm finding it hard to believe that she repeated those errors over and over and over and over and over again. And it makes me feel there must have been some other faults, but I never saw any allegations, at least in the briefing that I picked up, of specific other failures that caused her to flunk these other tests. Sure, Your Honor. She had, if you'll look at, I believe it's the reports by both deputies True and Deputy Van Hook in the first two trainings, not only did she repeatedly fail to keep her finger off the trigger, she repeatedly made bad decisions in training scenarios. She repeatedly failed to pull her gun when it was appropriate to do so or pulled her gun when it was not appropriate to do so. In the third remedial training, there are summaries in the record that were done by, I believe Deputy Dufferin was one of them, he also provided an affidavit in which he talked about not only she put her finger on the trigger a number of times, but when she was coached about it and got better about it, when they went on to something else, she would relapse and do it again. So I think that the record is replete with a number of different instances in which she continued to do the same violations over and over again and showed poor judgment, poor decision-making skills when using her weapon that are very clear on the record, not only in the statements that were given by Deputies True, Van Hook, Dufferin, Lieutenant Gabriel, they're just... So we're going to find reports saying she flunked because this is a case she should have pulled her weapon and she didn't. And another time she flunked because this is a case where she should not have pulled her weapon and she did. No, Your Honor, I don't think you're going to see it spelled out quite so definitively because it's a combination of issues that she had. What you will see is the statements by these evaluators who say, Ms. Rodriguez, we don't feel comfortable passing Ms. Rodriguez because of the sheer volume and types of errors that she committed. Here are some examples of the things that give us a lot of pause. We simply can't trust her with a weapon and this is why. That's what you're going to see in the record, Your Honor. Counsel, before we stop, I just would like to ask you about one of the comparators. Why wasn't Deputy Carter a suitable comparator in that he committed successive violations like Ms. Rodriguez? Well, I'm glad you asked that, Your Honor. First of all, Deputy Carter's infractions didn't occur in a training scenario, so they weren't necessarily done under the same standard that Ms. Rodriguez would have experienced. That's one. The second thing is, and I don't know that it's necessarily been made clear in any of the briefing, but it's certainly very clear in the record. Deputy Carter's infractions occurred almost within a couple of years of Ms. Rodriguez's first infraction before the second infraction occurred. By the time the second infraction occurred, he voluntarily resigned his position in the work release program and so that's why he would have been treated differently. The other thing is, his issue was not a training issue. It was a lapse in judgment. It was a failure to lock up his weapon. There's a deputy. So what they did was they just removed him from the situation where it could occur again, issued discipline for the double violation, and let him go on his way. But it's just not... Did he have the ability to carry a gun on duty? I don't believe there's anything in the record that suggests that Deputy Carter was relieved of the ability to carry a weapon. But again, his infractions only occur... A weapon was only involved once and it did involve the safe use of the gun. It involved the safe locking up of the gun. So he didn't demonstrate anything in his situations that showed it was unsafe for him to use the gun. It was simply he failed to put it where it should have been put to be safe away from the access to inmates that had access to that same area. It's a completely different type of situation and wouldn't have called for that kind of restriction. In short, your honors, I think it's very clear that the district court got this right. The district court applied the right standard, applied it appropriately and exhaustively, and we ask that you affirm. Thank you, counsel. Mr. Crone. Thank you, your honors. We'll give you a little extra time because we went over with Mr. Perkins, but go ahead. That's appreciated. So I promised the court a site for the proposition that Title VII protects multiple characteristics. That site is Frappi v. Affinity Gaming Blackhawk LLC. It's a decision of this court in 2020-966-F3D-1038. At 1045, this court said Title VII also prohibits discrimination based on a combination of protected characteristics, such as sex plus race discrimination, i.e. discrimination targeted only at employees of a particular race and sex. So picking up sort of at the end of where Mr. Perkins was describing what makes Deputy Carter an insufficient comparator, Deputy Carter's infraction was committed in real life on the job. That necessarily makes the infraction more serious. Certainly, the consequences were higher, yet Deputy Carter was not disciplined the same way that Ms. Rodriguez was. So the record in this case also shows, also demonstrates, that when a deputy qualifies with their weapon, so that is through remedial training or through initial weapons qualification, that means that the deputy has qualified on the basis of safety and accuracy. So Victor Threat, one of the sheriff's firearms instructors, testified to this in deposition. That means safety and accuracy are demonstrated. Also, multiple sheriff's department deputies, including firearms trainers, testified that if you're required to train, there is no remedial training after that. So if you qualify, you've demonstrated safety and proficiency. There is no additional remedial training unless something else comes up somewhere else down the road. And here, in Ms. Rodriguez's case, Mr. Perkins, the sheriff says that the record's going to show that there's some memoranda where various trainers identified continuing safety concerns with Ms. Rodriguez, but there is no additional act giving rise to the fact that these remedial trainings even occur, which is what is otherwise required in every other case. The sheriff could not point to a single other case with facts analogous to his actual training of Ms. Rodriguez as to the fact that she completed remedial training three times, she passed all three, yet she was continually required to undergo more. This statement wasn't considered by the district court at all, as far as I can tell. If you review the court's order, this isn't a situation where the court said, I've considered the totality of weak issue of disputed material fact. The court didn't mention the statement at all. The court didn't mention the statement of Victor Threat either, who said that when a deputy qualifies with their weapon, that demonstrates safety and proficiency. So I don't know that there's a proper record for this court to review at all with respect to those facts to the extent this court finds those facts material to its decision in this case. Finally, I apologize to your honors. I can't actually see the clock on my side. So why don't you make another point and then we'll try to wrap it up. Okay, thank you. And so it's just a brief and general point that below on summary judgment, the court was required to draw all reasonable influences in favor of the non-movie part. And here, I think this entire conversation we've had this morning demonstrates the fact that there are many disputed issues and material fact in this case and inferences were drawn against the non-moving party. That's a clear violation of how summary judgment motions ought to be decided. For those reasons and all the reasons included in the briefing, Ms. Rodriguez requests that this court reverse. Thank you. Thank you, counsel. The case will be submitted and counsel are excused.